32 C.C.P.A. (Patents)

WHEELER et al. v. KLEINSCHMIDT et al.,
and five other cases.

Nos. 5001–5006.

Court of Customs and Patent Appeals.

April 9, 1945.

Marvin J. Reynolds and Newman F. Presson, both of New York City, for appellants.

J. W. Schmied and W. F. Simpson, both of New York City (Carlson, Pitzner, Hubbard & Wolfe and Richard R. Wolfe, all of Chicago, Ill., of counsel), for appellee Colman.

Harold B. Whitfield, of Chicago, Ill., for appellee Kleinschmidt.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

These are appeals in interference proceedings from the decisions of the Board of Interference Examiners awarding priority of invention of the subject matter defined by the counts in issue to appellee Howard D. Colman in interferences Nos. 79,163 (appeal No. 5001), 80,401 (appeal No. 5005), and 80,402 (appeal No. 5006) and to appellee Edward E. Kleinschmidt in interferences Nos. 79,164 (appeal No. 5002), 79,165 (appeal No. 5003), and 79,166 (appeal No. 5004).

For the purpose of the hearing in this court, the records in the several interferences were consolidated. Accordingly, we shall dispose of the issues presented in one opinion.

### Appeal No. 5001.

### Interference No. 79,163.

The interference is between patent No. 2,193,810, issued to appellants (Evan R. Wheeler, Ray Hoover, and Robert F. Dirkes) March 19, 1940, on an application, No. 65,516, filed February 24, 1936, and the application of Howard D. Colman, No. 319,047, filed November 13, 1928. In addition to appellants' patent and appellee Colman's application, the interference originally involved the reissue application of one Edward E. Kleinschmidt, No. 335,431,

filed May 15, 1940, for the reissue of patent No. 2,193,967, issued March 19, 1940, on an application, No. 651,737, filed January 5, 1933, renewed March 30, 1938.

The counts in the interference relate to a telegraph exchange system which comprises a central station, sub-stations, a plurality of communication lines, storing means at the central station for storing a message received over the communication lines, switching means for selecting the communication lines over which the message is to be re-transmitted, and means controlled by the switching means for repeating the message over a selected line.

The counts in issue (Nos. 3 to 6, inclusive) originated in appellants' patent and were copied by appellee Colman and the party Kleinschmidt for interference purposes. They read:

"3. A telegraph exchange system comprising transmission channels, a plurality of transmitters, selective switching means for interconnecting said transmitters and said channels, means for controlling said switching means and means whereby said controlling means is responsive to code signals of predetermined character preceding and following each group of message signals.

"4. A multi-office telegraph communication system comprising means for storing message groups of signals at a point intermediate the originating and final offices of the system, means controlled at said intermediate point for selecting a relay channel for the stored signals and means for automatically repeating signals over a selected channel as soon as the latter becomes idle.

"5. In a telegraph system, a central station, other stations, a plurality of telegraph channels, connecting said other stations to said central station, storing means at said central station for storing character signals received over incoming channels, means to select one of said other stations and means to transmit the stored signals thereto either before or after completing the storage of a message.

"6. In a communication system, a central station, a plurality of communication lines, storing means at said central station for storing character signals received over said lines, switching means for selecting one of said lines over which said signals are to be retransmitted and retransmitting means controlled by said switching means

for repeating said signals over a selected line."

No testimony was introduced by any of the parties to the interference.

The issues presented to the Board of Interference Examiners were: (1) The right of the party Kleinschmidt and appellee Colman to make the claims constituting the counts in issue, and (2) the operativeness of the Kleinschmidt disclosure.

The board considered in detail each of those issues and held that appellee Colman could make the claims constituting the counts in issue; that the party Kleinschmidt could not make the claim constituting count 5, but that he could make the claims constituting counts 3, 4, and 6; that the party Kleinschmidt's reissue application disclosed an operative system; and that, as appellee Colman was the senior party, he was entitled to an award of priority of invention of the subject matter defined by the counts in issue.

The party Kleinschmidt did not appeal from the board's decision, but acquiesced therein. Accordingly, he is not a proper party in this appeal. See Nelson v. Berry and Jardine, 59 F.2d 351, 19 C.C.P.A., Patents, 1270; Island Road Bottling Co. v. Drink-Mor Beverage Co., 132 F.2d 129, 30 C.C.P.A., Patents, 708. The sole issue before us, therefore, is whether appellee Colman is entitled to make the claims constituting the counts in issue.

Appellee Colman's application discloses a telegraph system in which a message may be transferred automatically from one point or station in the system to a selected station of a plurality of stations by means of signal controlled devices or relay units, each of which is designed and adapted to receive and temporarily store messages in the form of mechanical signal combinations until an electrical transmission channel or path is selected by certain directing signals. Each of the signal control devices or relay units comprises a signal storing means for incoming signals, a selector, and a transmitter. Appellee discloses in his application, diagrammatically in Fig. 1 of his drawings, relay units (A1 to A10, inclusive) connected to similar relay units (B1 to B9, inclusive) by electrical transmission channels, and relay units (C1 to C12, inclusive) connected by transmission channels to B1 to B9, inclusive.

Appellee Colman states in his application that the successive characters of a message

are "represented preferably in the well known Baudot or five-unit code by individual signal combinations followed by a terminal or end-of-message control combination and preceded by one or more predetermined directing signal combinations collectively representing a predetermined destination."

It is further stated in appellee's application that in the use of the system disclosed therein an incoming message to be delivered to the relay unit, for example C8, is recorded on the mechanical storage medium of one of the A units, for example A1; that the selector mechanism associated with the transmitting unit in relay unit A1 operates in response to directing signals to select the transmission channel leading to relay unit B2, whereupon the transmission channel is automatically tested and, if found to be available for the transmission of the stored message signals, the transmission of such signals to the relay unit B2 is initiated automatically; that after the message signals are transferred to the relay unit B2, the operation of the transmitter in the relay unit A1 "is interrupted under the control of the end-of-message combination which also causes the seized transmission path to be freed thereby completing the first stage of the transfer"; that the electrical signals received by the relay unit B2 are again converted into mechanical combinations and temporarily stored pending the selection by the selector of relay unit B2 of the transmission channel leading to the relay unit C8; and that if the transmission channel is not busy, the transmitter of the unit B2 operates to transmit the individual message combination electrically to the relay unit C8 where it is recorded mechanically.

Appellee also states in his application that his system may be used in intra-city and inter-city communications between sending and receiving customers.

Original claim 18 in appellee's application reads:

"18. In a telegraph system having an originating station, a plurality of intermediate stations and a plurality of terminal stations, the combination of means at said originating station for recording a message in mechanical form with control signals embodied therein representing a predetermined one of said intermediate stations and a predetermined one of said terminal stations, mechanism at said originating station operable in response to said first mentioned control signal to effect transmission of the message to said predetermined intermediate station, means to record the message mechanically at said predetermined intermediate stations, and mechanism at said intermediate station operable independently of the mechanism at the originating station and under the control of said other signal to select a transmission path leading to said predetermined terminal station."

The storage devices employed by appellee comprise endless chains, each link of which is provided with five pins. Each of these pins has an inner and outer position and the various combinations of positionings of the pins constitute code signals corresponding to the letters of the alphabet. The pins are positioned by intermittently actuated plungers and five magnets are provided, one for each pin, for determining which pins are to be depressed on any given stroke of the plungers. Accordingly, the letters which are to be stored on the links of the storage devices are determined by controlling the circuits of the magnets.

Appellee's system is quite complicated and we deem it unnecessary to describe it in further detail.

Counsel for appellants contended before the Board of Interference Examiners, and contend here that appellee Colman's application does not disclose the last element in count 3, that is "means whereby said controlling means is responsive to code signals of predetermined character preceding and following each group of message signals"; that it does not disclose a "multi-office telegraph communication system," "means controlled at said intermediate point for selecting a relay channel for the stored signals," or "means for automatically repeating signals over a selected channel as soon as the latter becomes idle," as called for by count 4; that it does not disclose a "central station" and "other stations," a "plurality of telegraph channels connecting said other stations to said central station," or "incoming channels," as called for by count 5; and that it does not disclose a "plurality of communication lines, storing means at said central station for storing character signals received over said lines," or "means controlled by said switching means for repeating said signals over a selected line," as called for by count 6.

It is also the contention of counsel for appellants that appellee Colman does not

disclose in his application mechanism for receiving and setting up incoming signals on the storage mechanism in his relay units; that he does not disclose mechanism for extracting the alleged stored signals from the storage mechanism, converting them into electrical signal units, and applying them to an outgoing telegraph channel; and that as such mechanism is essential to the system defined by the counts in issue, appellee is not entitled to make the involved counts.

Counsel for appellants call attention to the fact that in its decision the Board of Interference Examiners stated that appellee Colman's "specification is silent as to the manner of setting up the coded combination on the chain [storage means] as the result of signals from the originating station, but this need not be considered here as none of the counts are directed to this feature. The station C8 may be considered as the final station, i. e., that of the called customer, but in this event the signal which is produced there is not in printed form but is recorded on the chain storage device. No means is shown for extracting a message from the storage chain to actuate a printer," and argue that the board, therefore, recognized that appellee failed to disclose in his application means for receiving and setting up signal combinations on his storage mechanism, or means for extracting signal combinations from his storage mechanism for transmission over an outgoing telegraph channel.

Counsel also call attention to the fact that again in its decision in the case of Rolla F. Blanchard et al. v. Howard D. Colman, interference No. 80,401, appeal No. 5005, hereinafter decided, the board, in considering the disclosure in appellee Colman's application, stated, with regard to the contention of counsel that appellee's application does not disclose a central station or telegraph channels terminating at the central station or outgoing telegraph channels, that such contention "appears to be based on the fact that Colman does not show or disclose anything except a single relaying office consisting of the units A, B & C with no means whereby a message from an originating office may be set up on the recording storage means shown; and with no disclosure of any means by which a message set up on the storage device could be extracted therefrom in the form of a printed message or other usable form."

Counsel for appellants further contend that appellee Colman does not disclose in his application any means for sending a code signal of predetermined character preceding each group of message signals or means responsive to such a code signal, as called for by count 3; that in the Colman disclosure the codal address signals are a part of each group of message signals; and that, therefore, the codal address signal cannot properly be held to precede each group of message signals, as called for by that count.

With reference to the argument of counsel for appellants that appellee Colman does not disclose in his application means for sending code signals of predetermined character preceding each group of message signals or means responsive to such code signals, the Board of Interference Examiners stated that, although the same signal selects and designates the called station and, therefore, performs two functions, it does not follow that it is a part of the message; that "To respond to the terms of the count [count 3] it is only necessary that apparatus be present which will accomplish the stated result whereby the switching means is operated by signals preceding and following the group of message signals"; that the code address signals in appellee's system "constitute predetermined characters for each group of message signals as each message is preceded with the address code signal which is determined by the class of message and its destination"; that the *address code signals* in appellee's system *control the means for operating* the "selector switches * * * in order to transmit a message, and the end of message signals function to restore the selector switches to their normal position"; and, accordingly, held that appellee was entitled to make the claim constituting count 3.

With reference to the contention of counsel for appellants that appellee's application does not disclose a multi-office communication system or means controlled at an intermediate point for selecting a relay channel for stored signals, as called for by count 4, the board stated that in his specification appellee referred in several places to his system having a plurality of stations which might be located in the same city or in different cities, and that original claim 18 called for such a system; that the relay stations A, B, and C, hereinbefore referred to, might be considered as illustrative of "of-

fices" within the meaning of the count, in which event A would be the originating office or station, B the intermediate office or station, and C the final office or station; that appellee clearly disclosed means controlled at an intermediate point for selecting a relay channel for the stored signals; and that the channel selection is made by means of switches, located at the intermediate office or station, which operate in response to the address code set up in the originating office or station.

As to counts 5 and 6 the board stated that appellee's application disclosed a telegraph system having a central station and other stations, a plurality of telegraph channels connecting the other stations with the central station, means at the central station for storing character signals received over the communication lines, and means controlled by the switching means for repeating signals over a selected line. The board, accordingly, held that appellee's application disclosed all of the elements defined by the counts in issue.

Appellee's application fully discloses means whereby a message stored on one storage device may be duly transmitted to, and stored on, a second storage device, and transmitted from the second storage device to a third and so on indefinitely, but *it does not specifically disclose how the message is originally placed in storage on the first storage mechanism, nor how it is finally removed from the last storage mechanism.*

. Although the counts in issue call for means for removing a message from one storage device and transmitting it to, and storing it on, a second or intermediate storage device, which means are clearly disclosed in appellee's application, they do not call for means for placing a message in storage in the originating office, nor do they call for means for extracting the message from the storage device at the final station.

It is true that in his application appellee Colman discloses an exchange system located within a city. However, it is clearly indicated in the Colman application that such a system might be duplicated in various cities for inter-city communication. It is clear, therefore, that appellee discloses in his application a multi-office system in which the offices may generally duplicate the one disclosed in detail.

Counsel for appellants further contend that Colman does not disclose originating and final offices.

Although originating and final offices are mentioned in count 4, they are not positively recited as elements of the count, but are included only inferentially by the statement that a storage device is between them. Moreover, the count does not state how the message originates, nor does it state what is done with the message at the final station. Accordingly, it cannot be construed as reciting means for putting the message on the first storage device or taking it off the last or final one. We are of opinion, therefore, that, so far as the count is concerned, the station having the first recording device may properly be regarded as the originating office, and the one having the last recording device the final office. It will be observed that the count does not call for any specific mechanism at either of those offices.

Counts 5 and 6 call for a "central station" and, in addition, count 5 calls broadly for "other stations." Those elements are clearly disclosed in appellee Colman's application, and what we have said with regard to count 4 applies to counts 5 and 6.

We have given careful consideration to the arguments presented here by counsel for appellants, but are of opinion, as were the Primary Examiner and the Board of Interference Examiners, that appellee Colman's application discloses all of the elements of the counts involved in this interference. Accordingly, the decision of the board is affirmed.

Affirmed.

### Appeal No. 5005.

### Interference No. 80,401.

The interference is between patent No. 2,193,811 issued to appellants (Rolla F. Blanchard, William B. Blanton, and Harry L. Browne) March 19, 1940, on an application filed February 25, 1936, and the application of Howard D. Colman, No. 319,-047, filed November 13, 1928.

The interference relates to a telegraph system which, for the purpose of this decision, is sufficiently defined by the count in issue.

The count reads:

"In a telegraph system, a central station, a plurality of telegraph channels terminating at said central station, a character storage device individual to each incoming channel for storing character signals received thereover, a plurality of outgoing telegraph channels at said central station,

a character storage device associated with each outgoing channel, means for transmitting characters from any of said first mentioned storage devices to any of said second mentioned storage devices and means for transmitting characters from each of said second mentioned storage devices over its associated outgoing channel."

The count originated in appellants' patent.

No evidence was introduced by either of the parties.

The issue presented to the Board of Interference Examiners was the right of appellee Colman to make the claim constituting the count in issue.

The board held that appellee could make the claim constituting the count in issue, and, as he was the senior party, awarded priority of invention of the subject matter defined thereby to him.

The sole issue before us is whether appellee is entitled to make the claim constituting the count in issue.

We have described the disclosure in appellee's application in interference No. 79,163 (appeal No. 5001). We deem it unnecessary, therefore, to describe it here.

It is contended here by counsel for appellants that appellee's disclosure does not support the various elements of the count in issue for reasons which we have fully set forth in interference No. 79,163 (appeal No. 5001).

The single count of this interference is quite similar to the counts involved in interference No. 79,163, and the issues presented in the two cases are also similar. For the reasons stated in our decision in interference No. 79,163 (appeal No. 5001) we are of opinion that appellee's application discloses a central station, as well as the remaining elements of the count in issue. Accordingly, the decision of the Board of Interference Examiners is affirmed.

Affirmed.

### Appeal No. 5006.

### Interference No. 80,402.

The interference is between patent No. 2,193,811 issued to appellants (Rolla F. Blanchard, William B. Blanton, and Harry L. Browne) March 19, 1940, on an application filed February 25, 1936, and the application of Howard D. Colman, No. 319,047, filed November 13, 1928. In addition to appellants' patent and appellee Colman's application, the interference originally involved the reissue application of Edward E. Kleinschmidt, No. 335,431, filed May 15, 1940, for the reissue of patent No. 2,193,967, issued March 19, 1940, on an application No. 651,737, filed January 5, 1933, renewed March 30, 1938.

The interference relates to a telegraph system which, for the purpose of this decision, is sufficiently defined by the two counts in issue which read:

"1. In a telegraph exchange system, an office, incoming and outgoing lines terminating thereat, signal storage devices associated with the incoming lines, other signal storage devices associated with the outgoing lines, means for repeating the signals stored in one of the storage devices associated with incoming lines and for storing said signals in one of said other signal storage devices and means for repeating the signals stored in said one of said other signal storage devices over an outgoing line.

"2. In a telegraph system, a central station, a plurality of incoming telegraph channels terminating at said central station, a plurality of character storage devices for storing characters received thereover, a plurality of outgoing channels at said central station, character storage devices associated with predetermined ones of said outgoing channels, means for initiating the transmission of message groups of characters from said first mentioned storage devices to any of said second mentioned storage devices, means controlled by predetermined character signals so transmitted for interrupting transmission from said first mentioned storage devices at the end of each message group and means for transmitting characters from each of said second mentioned storage devices over its associated outgoing channel."

The counts originated in appellants' patent.

No evidence was introduced by any of the parties.

The issues presented to the Board of Interference Examiners were: (1) the right of appellee Colman and the party Kleinschmidt to make the claims constituting the counts in issue, and (2) the operativeness of the Kleinschmidt disclosure.

The board held that appellee Colman and the party Kleinschmidt could make the claims constituting the counts in issue; that the party Kleinschmidt's disclosure was operative; and, as appellee Colman

was the senior party, awarded priority of invention of the subject matter defined by the counts in issue to him.

The party Kleinschmidt did not appeal from the board's decision, but acquiesced therein. Accordingly, he is not a proper party in this appeal. See Nelson v. Berry and Jardine, supra, and Island Road Bottling Co. v. Drink-Mor Beverage Co., supra, (cited in interference 79,163, appeal No. 5001). The sole issue before us, therefore, is whether appellee Colman is entitled to make the claims constituting the counts in issue.

Having described the disclosure in appellee Colman's application in interference No. 79,163 (appeal No. 5001), we deem it unnecessary to describe it here.

It is contended here by counsel for appellants that appellee Colman's disclosure does not support the various elements of the counts in issue for reasons which we have fully set forth in interference No. 79,-163 (appeal No. 5001).

The issues here involved are similar to those presented in interference No. 79,163 (appeal No. 5001) and, for the reasons stated in our consideration of that case, we are of opinion that appellee Colman's application discloses the subject matter of the counts in this interference.

The decision of the Board of Interference Examiners holding that appellee Colman discloses all the elements of the counts in issue is affirmed.

Affirmed.

## Appeal No. 5002.

### Interference No. 79,164.

The interference is between patent No. 2,193,811 (owned by the Western Union Telegraph Company) issued to appellants (Rolla F. Blanchard, William B. Blanton, and Harry L. Browne) March 19, 1940, on an application, No. 65,702, filed February 25, 1936, renewed October 18, 1939, and appellee Edward E. Kleinschmidt's reissue application No. 335,431, filed May 15, 1940, for the reissue of patent No. 2,193,967 (owned by The Teletype Corporation), issued March 19, 1940, on an application, No. 651,737, filed January 5, 1933, renewed March 30, 1938.

The counts in the interference, three in number, relate to a telegraph exchange system.

Counsel for appellants present two issues for determination, namely, first, the operativeness of the telegraph system disclosed in appellee's reissue application, and, second, the right of appellee to make the claim constituting count 3. No issue is raised here as to the right of appellee to make the claims constituting counts 1 and 2 of the interference.

Count 3 reads:

"3. In combination with a tape having a plurality of groups of message signals recorded thereon, a tape transmitter for repeating the signals recorded on the tape, a plurality of telegraph channels, selective switching means for connecting said tape transmitter to any one of said channels, means operable over the selected channel for initiating the operation of the transmitter and means for automatically stopping the tape transmitter at the completion of the transmission of each group of message signals."

Appellee's reissue application discloses an automatic telegraph system in which messages may originate at any one of a number of outlying stations, and may be transmitted to a central station, where they are recorded on perforated tape. The messages thus recorded will include, first, the address in duplicate, second, the body of the message, third, an answer-back cut-in signal code, fourth, a signature, consisting of the address of the sending station, and fifth, an end-of-message signal.

When the complete message has been recorded at the central station, the calling line is released and mechanism becomes effective which first compares the duplicate addresses and, if they are found to correspond, utilizes the address to select, successively, the channels by which a connection is made with the station called. If this station is idle, the message is transmitted and, when the answer-back cut-in signal is reached, the answer-back mechanism becomes effective to record the address of the calling station and the address of the called station. Those addresses are then retransmitted to the calling station to show that the message has been received. The system includes various details which are not involved here and need not be considered. It also includes other details which can best be discussed in connection with specific issues raised by counsel for appellants.

Counsel for appellee contends that appellants are estopped by judgment from rais-

ing the question of the operativeness of appellee's telegraph system because of a decision in a prior interference (No. 68,426) involving the application (No. 585,582, filed January 8, 1932) of Robert F. Dirkes and Vernon R. Kimball (assigned to the Western Union Telegraph Company), the Robert F. Dirkes being the same Robert F. Dirkes involved in interferences Nos. 79,163 and 79,166, and appellee's original application, No. 651,737, which matured into patent No. 2,193,967.

Interference No. 68,426 was terminated in December 1935 by the Examiner of Interferences awarding priority of invention of the subject matter defined by the counts there in issue to Kleinschmidt by virtue of a concession of priority of invention executed on behalf of the parties Dirkes and Kimball and the Western Union Telegraph Company. The interference involved four counts, which define a method of transmitting a telegraph message.

The method there involved comprised, substantially, converting a message into a so-called "control-form," in which form the message in two parts (an address part and a remainder part), then, as stated in count 4 of that interference, "combining under control of the address part of the message a plurality of part-paths to form a complete path to the place of destination of the message, and thereafter transmitting both parts of the message over the path under control of the form."

In the instant case, the Board of Interference Examiners held that appellants were estopped by judgment from raising the question of the operativeness of appellee's disclosure because of the decision in interference No. 68,426, the board stating that, although no decision had been brought to its attention which was directly in point, a somewhat analogous situation existed in the case of Waller v. Coe v. Brown, 193 O.G. 511, 1913 C.D. 187. The board apparently relied, however, upon the decision in the case of Ex parte Robinson, 32 U.S.P.Q. 165.

Although the board held that appellants were estopped from raising the question of the operativeness of appellee's disclosure, it, nevertheless, considered that question and held that appellee disclosed an operative system.

In the Waller case, supra, the Commissioner of Patents held that the assignee of the Waller application was estopped from raising the question of the Coe and Brown applications containing new matter because it had failed to present a proper and timely motion to dissolve.

In the case of Ex parte Robinson, supra, it appears that the party Robinson had been involved in an interference (involving four counts) with one Barnebl. Robinson had conceded priority of invention to Barnebl as to the subject matter of counts 1, 2, and 3, and the Examiner of Interferences awarded priority of invention of the subject matter defined by those counts, and also that defined by count 4, to Barnebl. Thereafter, in an ex parte prosecution of the Robinson application, the Primary Examiner rejected the claim in the Robinson application which constituted count 4 in the interference proceeding on the ground that it was unpatentable over count 3 of the interference. On appeal, the Board of Appeals held that as Robinson did not move to dissolve the interference on the ground that the claim constituting count 4 of the interference was not supported by the Barnebl disclosure he was not in a position to raise that question in an ex parte prosecution of his application.

The decisions in the Waller and Robinson cases, supra, obviously, are not controlling of the issue in the instant case.

Counsel for appellee argues that the Board of Interference Examiners was right in holding that appellants were estopped from raising the question of the operativeness of appellee's disclosure; that it was the duty of the common assignee (the Western Union Telegraph Company) to have raised that question in the prior interference (No. 68,426); and that as the Western Union Telegraph Company failed to do so, appellants are now estopped to raise that question in the instant interference. In support of his views, counsel cites several cases, among them being: In re Mason, 94 F.2d 220, 25 C.C.P.A., Patents, 873; Avery v. Chase, 101 F.2d 205, 26 C.C.P.A., Patents, 823; United States Rubber Co. v. Coe, Commissioner of Patents, App. D.C., 146 F.2d 315.

The foregoing cited cases relied upon by counsel for appellee have to do with the application of the doctrine of estoppel in accordance with the provisions of rule 109 of the Rules of Practice in the United States Patent Office, 35 U.S.C.A. Appendix. The issue here presented does not involve the provisions of that rule. Accord-

ingly, the principles announced in the decisions in those cases are not applicable to the issue in the instant case.

We have examined the decisions in other cases cited by counsel for appellee in support of his views, and find that they clearly are not in point. Accordingly, we deem it unnecessary to discuss them here.

It is conceded by counsel for appellee that the joint parties (Dirkes and Kimball) in interference No. 68,426 could not have made any of the claims constituting the counts in the instant interference. Furthermore, at the time the decision was rendered in the prior interference, appellants had not filed their application which matured into the patent here involved, nor, so far as the record here discloses, was the common assignee the owner of any application which disclosed the invention here involved and which might have been included in that interference.

 The law with respect to estoppel by judgment was fully considered by the Supreme Court in the case of Cromwell v. County of Sac, 94 U.S. 351, 352, 24 L.Ed. 195, where it was stated:

"* * * there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.

*　　*　　*　　*　　*

"But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. *In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action."* (Italics not quoted.)

The principles announced in the Cromwell case, supra, have been followed consistently. See Nesbit v. Independent District of Riverside, 144 U.S. 610, 618, 12 S.Ct. 746, 36 L.Ed. 562; City of New Orleans v. Citizens' Bank, 167 U.S. 371, 386, 17 S. Ct. 905, 42 L.Ed. 202; United Shoe Machinery Corporation et al. v. United States, 258 U.S. 451, 458, 459, 42 S.Ct. 363, 66 L. Ed. 708.

██ Although the parties in interference No. 68,426 and in the instant interference are the same, and appellee's original application was involved in the prior interference, the application which matured into appellants' patent here involved was not in the prior interference, nor did the application of Dirkes and Kimball disclose the invention involved in the instant interference. Furthermore, from an examination of the counts involved in the prior interference and those here in issue, it is evident, we think, that the causes of action involved in the instant interference differ materially from those involved in the prior interference. The difference is not merely one of scope or breadth, but the counts in the instant interference are for distinct and separate inventions from those defined by the counts in the earlier interference. Accordingly, the decision in interference No. 68,426 is res adjudicata only as to the issues actually litigated and determined therein, and not as to the issues which might have been, but were not, litigated and determined. As the question of the operativeness of appellee's disclosure was not raised or determined in that interference, the decision therein does not estop appellants from raising that question in the instant interference.

In the instant case, the board did not pass upon the question of estoppel in pais with regard to the issue of the operativeness of appellee's disclosure, and, under the circumstances of this case and in view of the record before us, we deem it unnecessary to discuss that question here. Accordingly, we shall proceed to consider the question of the operativeness of appellee's disclosure.

Although appellants formerly advanced many grounds of inoperativeness of appellee's system, they rely here only on

those designated D, A, and B. Accordingly, the remaining grounds need not be considered.

Ground D, which is discussed at greatest length by counsel for appellants, relates to the tape transmitter mechanism. The intended operation requires that this mechanism shall advance the tape a short distance until the duplicate addresses have been compared, that it shall then retract the tape substantially to its former position, and finally feed the entire message through the device. The arrangement is such that three means will be required, one for each of the forward movements and one for the retracting movement. The means for the retracting movement only is fully disclosed by appellee.

Appellee's application states that the first forward movement is a "stepping" produced by a designated shaft on the shaft of a feed wheel which moves the tape forward. Although the mechanism which produces this stepping movement is not completely illustrated, no means being shown for connecting the aforesaid shafts, it obviously would be understood from the disclosure to be a pawl and ratchet type of device, and since it is necessary that such a device shall permit the tape to be retracted, it is evident that the pawl must not remain in engagement with the ratchet, but must be withdrawn at the end of each forward step.

The Primary Examiner and the Board of Interference Examiners were of opinion that one skilled in the art could readily produce a device that would operate so as to permit the tape to be retracted. The Primary Examiner referred to three patents (York et al., No. 1,298,622, and McKay, No. 1,609,955, issued prior to the filing of appellee's application, and Morton et al., No. 1,904,164, issued subsequent to appellee's filing date) as showing pawl and ratchet mechanisms suitable for such purpose.

Counsel for appellants properly point out that the pawl and ratchet devices in the patents to York et al. and McKay are so designed that they will not permit retraction, while the Morton et al. patent is not available to appellee since it issued after his original application was filed.

Evidently the tribunals of the Patent Office were of opinion that one skilled in the art could, without the exercise of the inventive faculties, modify the pawl and ratchet devices disclosed in the patents available to appellee so as to permit the tape in appellee's disclosure to be retracted. In other words, as we understand it, it was the view of the Patent Office tribunals that one skilled in the art could modify the prior art pawl and ratchet devices so that the pawl would engage the ratchet only during the forward movement of the tape.

There is nothing of record tending to indicate that it would require anything more than mechanical skill to modify the prior art pawl and ratchet devices so as to make them available for use in appellee's system.

Although the feeding means, which is to move the tape forward after its retraction, is not illustrated in appellee's reissue application, its construction would appear to present no difficulty, it being only necessary that the tape be advanced step by step in conformity with the operation of the tape sensing mechanism. It is clear what movements are intended to be given to the tape by appellee, and both the Primary Examiner and the Board of Interference Examiners were of opinion that one skilled in the art would be able to provide mechanism which would produce such movements.

Ground A of alleged inoperativeness of appellee's system relates to a relay magnet which is required to be of the slow-release type and also to hold its armature during a reversal of current. Although the relay magnet is not specifically described, counsel for appellants allege that it is illustrated as being of the slug type, and that such magnets will not hold their armatures during a current reversal.

Both the Primary Examiner and the Board of Interference Examiners held that magnets which would perform the required functions were old in the art, and could be employed in appellee's system without the exercise of the inventive faculties.

Ground B of alleged inoperativeness relates to one of the devices employed by appellee for reperforating the tape. This device is not shown in detail. However, appellee's specification states that it may be of the type shown in his patent No. 1,884,-743.

It was held by the Primary Examiner and the Board of Interference Examiners, and it is conceded by counsel for appellee, that the device disclosed in patent No. 1,884,743 could not be used in the system here involved. However, the examiner and the board held that other devices which would

perform the intended function were available in the art and could be used without invention.

 Appellee's device, being the subject of an issued patent, is presumed to be operative, and this presumption is supported by the concurring holdings of the Primary Examiner and the Board of Interference Examiners that appellee's disclosure is sufficient to enable one skilled in the art to make his system operative. Under such circumstances a very clear showing is necessary to justify a holding of inoperativeness. We are unable to hold that such a showing has been made.

 The next question requiring our consideration is the right of appellee to make the claim constituting count 3 of the interference.

The count calls for a tape transmitter and "means for automatically stopping the tape transmitter at the completion of the transmission of each group of message signals."

In appellants' patent, in which the count originated, the "stopping," referred to in the count, is of such a nature that a manual operation is necessary for re-starting the tape transmitter.

In appellee's system, if there is a second complete message stored on the tape when the transmission of the first message is completed, the tape transmission device is automatically disconnected from the distributor used for the first message and connected to another distributor and the transmission of the second message is begun. The transfer of the tape transmitter from one distributor to another involves a momentary period of idleness while the connections are being switched. This period of idleness was held by the examiner and by the board to satisfy the requirement of the count as to "stopping." Although the period of idleness may be short, the operation of the device requires that a definite stop be made as called for by the count.

The examiner and the board held that the broad language of the count, which does not require a stop of any definite duration, is satisfied by appellee's disclosure. We are unable to conclude that the tribunals were in error in so holding.

For the reasons stated, the decision of the Board of Interference Examiners is affirmed.

Affirmed.

Appeal No. 5003.

Interference No. 79,165.

The interference is between patent No. 2,193,812 issued to appellant, William B. Blanton, March 19, 1940 (assigned to the Western Union Telegraph Company), on an application, No. 108,485, filed October 30, 1936, renewed November 15, 1939, and appellee Kleinschmidt's reissue application, No. 335,431, filed May 15, 1940, for the reissue of patent No. 2,193,967, issued March 19, 1940, on an application, No. 651,737, filed January 5, 1933, renewed March 30, 1938.

The counts in the interference, seven in number, relate to a telegraph exchange system. They originated in appellant's patent and were copied by appellee for interference purposes.

Two issues are presented here by counsel for appellant, namely, first, the operativeness of the telegraph system disclosed in appellee's reissue application, and second, the right of appellee to make the claims constituting counts 2 to 7, inclusive. No issue is raised here as to the right of appellee to make the claim constituting count 1 of the interference.

Count 3 is sufficiently illustrative of the counts under consideration. It reads:

"3. In a telegraph system, a plurality of permutation code transmitters, a group of lines or channels, selective switching means for extending the circuit of any of said transmitters to said group of lines or channels, finder switches, means for operating said switches to select an idle line or channel and means for rendering each of a plurality of transmitters operative one at a time."

We have described appellee's telegraph system as disclosed in his reissue application in interference No. 79,164 (appeal No. 5002). It is unnecessary, therefore, that we describe it here. In that interference we held that appellee disclosed in his reissue application an operative system, and it is unnecessary that we repeat here what we said there.

The only reissue that requires discussion in this interference is the right of appellee to make the claims constituting counts 2 to 7, inclusive. The issue is the same as to each of those counts, namely, whether appellee's reissue application discloses "finder switches" as called for by each of the counts.

It appears to be conceded by counsel for appellant that appellee's reissue application discloses switches which produce the same results as "finder switches." It is the contention of counsel, however, that the term "finder switch" has a recognized meaning which is not satisfied by the switches disclosed in appellee's reissue application.

Counsel for appellee, on the other hand, contends that the counts are satisfied by any switch which will perform the function of "finder switches" called for by the counts.

The distinction between appellant's device and that of appellee is that in appellant's device *a switch which is connected with a called line* searches over contacts connected with a number of *calling lines,* whereas in appellee's device *a switch connected with a calling line* searches over contacts connected with a number of *called lines.*

It is contended by counsel for appellant that the switch disclosed by appellant is a "finder," and that that disclosed by appellee is a "selector."

That contention of counsel is supported to some extent by definitions proposed in 1932 by the American Institute of Electrical Engineers in which a switch, corresponding generally to that of appellant, designed to move over a number of contacts to locate the calling line is defined as a "finder switch," while a switch which is connected with a circuit over which signals are received, and which is designed to move over a plurality of contacts to find an idle circuit, is called a "selector switch." Accordingly, it would seem that at least some electrical engineers have recognized a distinction between the two types of switches, and, whether or not the definitions referred to were ever adopted, they afford evidence that the term "finder switch" has, in some instances, been interpreted as limited to the type of switch in which the called circuit seeks out a connection among a number of calling circuits.

■ Both the examiner and the board concluded that appellee was entitled to make the claims constituting counts 2 to 7, inclusive. However, they did so on somewhat different grounds. Although the examiner stated in his decision that the term "finder switch" may be well known in the art, "he, nevertheless, held that, since appellee's switches performed the func-

tions set forth in the counts, appellee could make the counts." The Board of Interference Examiners, on the other hand, held that if "a selector switch and a finder switch were well recognized as two different devices even though they did perform the same function or accomplish the same results in the systems under consideration it would have to be held that Kleinschmidt could not make the count in issue as the doctrine of equivalents has no application in interference proceedings." The statement of the board as to equivalency is undoubtedly correct. See Potts v. Kimball et al., 134 F.2d 327, 30 C.C.P.A., Patents, 847, and cases therein cited. The board, however, cited a former patent owned by the Western Union Telegraph Company (appellant's assignee) in which the term "finder switch" was applied to a switch similar to that of appellee and, in view of this and of the fact that the definitions hereinbefore referred to were, as far as shown, proposed only and not adopted, held that it had not been established that finder and selector switches were well recognized as different devices, and that the term "finder switch" did not distinguish from appellee's mechanism.

■ It is true that the record does not establish a universally adopted meaning of the term "finder switches." However, it does establish that the meaning of that term has been limited by at least some persons skilled in the art to a switch which is connected with a called line, and which searches over contacts connected with a number of calling lines. Accordingly, if the term "finder switch" is not universally and definitely limited to the meaning ascribed to it in appellant's patent, it is ambiguous and must be interpreted in the light of appellant's patent where the counts originated. Finch v. Dillenback, 121 F.2d 459, 28 C.C.P.A., Patents, 1171, 1177.

It will be observed that if the holdings of the Patent Office tribunals and the contentions of counsel for appellee are correct, the word "finder" as used in counts 2 to 7, inclusive, is wholly superfluous.

■ It clearly appears from appellant's patent that the term "finder" was not intended to be superfluous. On the contrary, it is apparent that appellant intended by the use of the term "finder switches" to designate a switch which is connected with a *called line* and moves over contacts connected with a plurality of *calling lines* rather than a switch which is connected with a *call-*

*ing line* and moves over contacts connected with a plurality of *called lines* as disclosed by appellee. Accordingly, interpreting the term "finder switch" in the light of appellant's patent, it is evident that appellee does not disclose a "finder switch" in his reissue application and, therefore is not entitled to make the claims constituting counts 2 to 7 inclusive.

For the reasons stated, the decision of the Board of Interference Examiners is modified, being affirmed as to count 1 and reversed as to counts 2 to 7 inclusive.

Modified.

## Appeal No. 5004.

### Interference No. 79,166.

 The interference is between patent No. 2,193,810, issued to appellants (Evan R. Wheeler, Ray Hoover, and Robert F. Dirkes) March 19, 1940, on an application, No. 65,516, filed February 24, 1936 and appellee Kleinschmidt's reissue application, No. 335,431, filed May 15, 1940, for the reissue of patent No. 2,193,967, issued March 19, 1940, on an application, No. 651,737, filed January 5, 1933, renewed March 30, 1938.

The counts in the interference, thirteen in number, relate to a telegraph exchange system. They originated in appellants' patent and were copied by appellee for interference purposes.

Two issues are presented here by counsel for appellants, namely, first, the operativeness of the telegraph exchange system disclosed in appellee's reissue application, and, second, the right of appellee to make the claims constituting counts 1, 4, 5, 6, and 9 to 13, inclusive. No issue is raised here as to the right of appellee to make the claims constituting counts 2, 3, 7, and 8.

It may be stated at the outset that, if there be ambiguity in the counts, they should be construed in the light of appellants' patent where they originated. See Finch v. Dillenback, supra (cited in interference No. 79,165, appeal No. 5003).

We have described appellee's telegraph exchange system, as disclosed in his reissue application, in interference No. 79,164 (appeal No. 5002). It is unnecessary, therefore, that we describe it here. In that interference we held that appellee disclosed in his reissue application an operative system. Accordingly, it is unnecessary that we discuss that issue here. We shall proceed, therefore, to consider the right of appellee to make the claims constituting counts 1, 4, 5, 6, and 9 to 13, inclusive.

Count 1 calls for a transmitting unit, a plurality of printer units, a channel to each printer unit, selective switching means for connecting the transmitting unit to any desired channel, and "means individual to each channel for interposing predetermined character signals between the groups of signals forming the messages."

In appellants' patent, the "character signals," called for by the count, are interposed between messages sent by the transmitter.

In attempting to read the count on appellee's disclosure, counsel for appellee and the tribunals of the Patent Office consider the transmitter which sends the main messages to be the transmitting unit, but regard "the messages," referred to in the last clause of the count, to be the answer-back signals transmitted by the called station to indicate that the message has been received. Assuming that the answer-back signals may properly be called messages, it seems clear that they cannot be considered "the messages" recited in count 1. Since the count calls for a transmitting unit and receiving units, it is clear, we think, that *the* messages, referred to in the count, mean messages transmitted from the transmitting unit to the receiving printer units. The use of the definite article "the" leaves no doubt as to the meaning of the term "messages."

In appellee's disclosure, as hereinbefore noted, it is necessary to consider the term "the messages," called for by the count, as answer-back signals which pass, not from the transmitting unit to the receiving printer units, but from the receiving station to the transmitting station. We find no basis whatsoever in count 1 or in appellants' patent for holding that any such meaning of the term "the messages" was intended. Furthermore, if the count is so broadly construed as to mean that answer-back signals are "the messages," it becomes vague and indefinite.

We are of opinion that count 1 should be construed as calling for means for interposing predetermined character signals between messages passing from the transmitting unit. We hold, therefore, that appellee is not entitled to make the claim constituting that count.

Count 4 calls for means for stopping the tape transmitter at the end of each group of message signals. It is thus similar to count 3 of interference No. 79,164 (appeal No. 5002). For the reasons stated in our decision in that interference, we hold that appellee is entitled to make the claim constituting count 4.

Count 5 calls for a plurality of transmitters and transmission channels, *manually operable means for selecting a desired channel,* and automatic means for rendering the transmitters operative to send a message over a selected channel when it becomes idle.

In appellants' system, the operator reads the address of a message and manually connects the transmitter with a line corresponding with the address, whereupon the message will be transmitted when the line becomes idle.

In appellee's system, the actual selection of the individual channel to be used is always made automatically. In appellee's disclosure certain messages are deferred until the load on the lines is light and, for this purpose, he employs manually operable switches which may selectively permit certain lines to be used for such messages. However, although the *opening* of one of those switches prevents the use of the corresponding line for deferred messages, *its closing* does not cause, but rather permits, a message to be sent over that line, that is, the closing of a switch merely makes a corresponding line available so that it may be automatically selected by another means. That fact was recognized by both the examiner and the board. Those tribunals were of opinion, however, that the selection of a desired channel, as called for by the count, did not necessarily mean that the channel was to be used, but merely that it was available for use.

We are of opinion that the meaning of count 5, especially in view of appellants' disclosure, is that the channel is selected *for use in transmitting a particular message and that it is actually used for that purpose.* This is not true in appellee's system. We hold, therefore, that appellee does not disclose the manually operable selecting means called for by count 5, and that he is not entitled to make the claim constituting that count.

Counts 9 to 13, inclusive, like count 5, are limited to manual selection of channels and, for reasons similar to those stated in our discussion of count 5, those counts are not readable on appellee's disclosure. Accordingly, appellee is not entitled to make the claims constituting those counts.

Count 6, after reciting various channels and transmitters, calls for "means for rendering one of said transmitters inoperative to transmit over one of said channels when another of said transmitters is connected to *or* is awaiting connection to said one of said channels." (Italics ours.)

In appellants' system the arrangement is such that certain transmitters take preference over others, so that one of the less favored transmitters cannot be connected to the channel so long as a preferred one is either connected to it or is waiting connection.

In appellee's disclosure there is no arrangement for preference. The first transmitter calling for the channel seizes it and, of course, no other transmitter can take it while it is being used. However, if, while the channel is in use, other transmitters call for it there is no preference as between them; that is, the first transmitter calling for the channel after it becomes idle seizes it.

The use of the word "or" in count 6 is a clear requirement that there shall be at least one transmitter which cannot seize a channel, either while the channel is in use or while another transmitter is waiting for it. In other words, count 6 requires that when one transmitter is waiting for a channel there must be some means which will preclude another transmitter from using it. No such means is disclosed by appellee since, so long as one of his channels is open, any transmitter may seize it regardless of whether or not others are waiting for it.

There being no disclosure of means in appellee's reissue application which will prevent the seizure of an idle channel by one transmitter while another is waiting for it and, since the count clearly calls for such means, appellee is not entitled to make the claim constituting count 6.

For the reasons stated, the decision of the Board of Interference Examiners is modified, being affirmed as to counts 2, 3, 4, 7, and 8, and reversed as to counts 1, 5, 6, and 9 to 13, inclusive.